IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

ANDREW DAVIS,
    Petitioner,

vs.                                              Case No.: 4:06cv255/RH/EMT

JAMES R. McDONOUGH,
    Respondent.
_____/

**REPORT AND RECOMMENDATION**

      This cause is before the court on Petitioner's petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (Doc. 1). Respondent filed an answer and relevant portions of the state court record (Docs. 8, 15). Petitioner filed a reply (Doc. 9).

      The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N. D. Fla. Loc. R. 72.2(b). After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a). It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.    BACKGROUND AND PROCEDURAL HISTORY

      The relevant aspects of the procedural background of this case are undisputed by the parties and established by the state court record. On March 8, 1991, pursuant to a guilty plea, Petitioner was adjudicated guilty in the Circuit Court for Calhoun County, Florida, Case Numbers 90-000380, 90-000385, 90-000386, 90-000387, 90-000388, 90-000389, and 90-000390, of three counts of

robbery and four counts of kidnapping (*see* Doc. 1 at 5; Doc. 8, Ex. A, docket sheets).[1] The offenses occurred on October 4, 1990 (*see* Doc. 8, Ex. A at 42–43, 45–56). Petitioner was sentenced to concurrent terms of fifteen (15) years of incarceration, to be followed by concurrent terms of ten (10) years of probation, on each count, with credit for pre-sentence jail time of 154 days (Doc. 1 at 5; *see also* Doc. 8, Ex. A, Defendant Case History Detail for Case Numbers 90-000380, 90-000385–90). In Florida, this is referred to as a "probationary split sentence." *See* Gibson v. Fla. Dep't of Corr., 885 So. 2d 376, 381 (Fla. 2004) (defining a probationary split sentence as, "consisting of a period of confinement, none of which is suspended, followed by a period of probation"). Through the accumulation of time served and gain time, Petitioner was released from incarceration on April 1, 2004, to the probationary period imposed at sentencing (Doc. 1 at 5). He had actually served approximately thirteen (13) years of his fifteen-year sentence (*see id.*).

On May 1, 2004, Petitioner was arrested for violation of probation (VOP) (Doc. 1 at 5). On November 4, 2004, pursuant to a written plea agreement, Petitioner pleaded no contest to violating his probation in Case Numbers 90-000380, 90-000385–90 (Doc. 8, Ex. A at 57–59). The written plea agreement included the following terms:

> **The intent of the terms of the sentence is that the Defendant receive a prospective sentence of Ten (10) years in the Department of Corrections with respect to Case Nos. 90-380, 90-385, 90-386, 90-387, 90-388, 90-389, 90-390, with credit for time served since the execution of the VOP Warrant on May 1, 2004; and no probation to follow.**
>
> **However, to achieve this desired result for offenses committed between October 1, 1989 and December 31, 1993, the Defendant and the State are aware that the Florida Supreme Court decisions in *Green* and its progeny may impact this desired end result unless the plea and sentence reflect the following:**
>
> **1. The sentence to be imposed for Violation of Probation is not to be increased or reduced for time served or time gained on the original 15 years prison component previously served by the Defendant in these matters.**
>
> **2. The Defendant shall be allowed credit for time served limited to the time between the date of the execution of the violation of probation warrant, i.e. May**

---

[1]Petitioner was also convicted of eight counts of forgery and eight counts of uttering a forgery, third degree felonies, but the dispositions of those offenses are not relevant to this case.

> 1, 2004, and the date of his omission [sic] of violation his probation, i.e. November 4, 2004;
>
> 3.      The Department of Corrections shall apply original jail time credit and shall compute and apply credit for time served on each on the above-noted cases that he is admitting violations thereof, to wit:  Calhoun County Case Nos. 90-380, 90-385, 90-386, 90-387, 90-388, 90-389, 90-390;
>
> 4.      The Court will allow unforfeited gain time previously awarded on the above-noted cases/counts forfeited under section 948.06(6).
>
> **The Court shall dismiss the probation on all remaining cases. All unpaid restitution on all cases shall be converted to a Civil Judgment.**

(Doc. 8, Ex. A at 57–59).  Petitioner was adjudicated guilty and sentenced to concurrent terms of ten (10) years of imprisonment with no probation to follow, and credit for 186 days of pre-sentence jail time (date of arrest on VOP warrant to date of sentencing on VOP) but no credit for the time he actually served on his previous sentences, which was thirteen (13) years, and no credit for earned and unforfeited gain time (Doc. 1 at 5; Doc. 8, Ex. A at 18–39, 60–78).  Because Petitioner's original offense conduct occurred between October 1, 1989 and December 31, 1993, the rulings of the Florida Supreme Court in State v. Green, 547 So. 2d 925 (Fla. 1989) and its progeny applied;[2] therefore, the sentencing court checked the box in front of the following pre-printed language on the VOP judgments and sentences:

> Defendant is allowed credit for **186** days credit county jail served between the date of his arrest as a violator and the date of resentencing.  The Department of Corrections shall apply original jail credit awarded and shall compute and apply credit for actual time served in prison and any earned and unforfeited gain-time awarded during prior service on:  **(offenses committed between October 1, 1989, and December 31, 1993)**, pursuant to section 944.276 Florida Statutes.

(*id*. at 20, 29, 31, 33, 35, 37, 39, 76–78) (emphasis indicates language added by sentencing court). Next to this pre-printed language, the sentencing court wrote, "*Defendant to start a new 10 year DOC sentence with credit for 186 days and no prior DOC credit to be applied*" (*id*.).  This additional language reflected that parties' agreement that Petitioner would not receive credit on his

---

[2]In Green, the Florida Supreme Court held that upon sentencing for a violation of probation, a defendant is entitled to credit for time served on the original sentence, including credit for earned, unforfeited gain time. *Id.* at 926.

sentence for any time served on his original fifteen-year sentence or any unforfeited gain time earned on the original sentence (*id.* at 57–58). Petitioner did not appeal the convictions or sentences (Doc. 1 at 2).

On April 13, 2005, Petitioner filed a Motion to Correct Sentence pursuant to Rule 3.800(a) of the Florida Rules of Criminal Procedure (Doc. 8, Ex. A at 1–2). The trial court summarily denied the motion in a written opinion rendered on May 31, 2005 (*id*. at 3). Petitioner appealed the decision to the Florida First District Court of Appeal (First DCA) (*id.*, Ex. B). The appellate court affirmed per curiam without written opinion on November 23, 2005, with the mandate issuing December 20, 2005 (*id.*, Exs. C, D). Davis v. State, 916 So. 2d 791 (Fla. 1st DCA Nov. 23, 2005) (Table).

Petitioner filed the instant habeas action on May 24, 2006 (*see* Doc. 1 at 8). Respondent concedes that the petition is timely (Doc. 8 at 3–4).

II.    STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States. As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19. In relevant part, section 2254(d) now provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[3] The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); <u>Ramdass v. Angelone</u>, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000). In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." <u>Lockyer v. Andrade</u>, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case." <u>Neelley v. Nagle</u>, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* <u>Parker v. Head</u>, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts

---

[3] Unless otherwise noted, references to <u>Williams</u> are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

Case No. 4:06cv255/RH/EMT

the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06).  The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06).  If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409.  Whether a State court's decision was an unreasonable application of legal principle must be assessed in light of the record the court had before it. Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); *cf.* Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001).  The State court's incorrect or erroneous application of clearly established law will be held to be reasonable and not warrant a writ so long as the State court adjudication results in a "satisfactory conclusion." Williams, 529 U.S. at 410–12.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28

U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see e.g. Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact.").

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. See Panetti v. Quarterman, --- U.S. --- 127 S. Ct. 2842, 2858, --- L. Ed. 2d --- (2007); Jones, 469 F.3d 1216 (same). The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

III. EXHAUSTION AND DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[4] thereby giving

---

[4]Section 2254 provides, in pertinent part:

(b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
    (A) the applicant has exhausted the remedies available in the courts of the State; or
    (B) (i) there is an absence of available State corrective process; or
       (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within

the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)). To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim. Duncan, 513 U.S. at 365–66; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); Picard, 404 U.S. at 277–78.

The Supreme Court has offered the following guidance for determining whether a habeas petitioner has met the "fair presentation" requirement. In Picard v. Connor, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief. 404 U.S. at 277. In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," *id.*, 404 U.S. at 278, the Court rejected the contention that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is insufficient to make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court. In Anderson v. Harless, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982), the habeas petitioner was granted relief on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt. *Id.* 459 U.S. at 7 (citing Sandstrom v. Montana, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)). The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law." Anderson, 459 U.S. at 7 (internal quotation marks omitted). The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited case advanced a federal claim. *Id.*, 459 U.S. at 7 and n.3.

---

the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought. *Id.*

Years later, the Supreme Court readdressed the "fair presentation" requirement in Duncan v. Henry, 513 U.S. 364. The Duncan Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[5] The Supreme Court explained,"[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court." Duncan, 513 U.S. at 365–66. Recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." Baldwin v. Reese, 541 U.S. 27, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004). The Baldwin Court commented that "a litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" *Id.* With regard to this statement, the Eleventh Circuit stated in McNair v. Campbell, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion. However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'" McNair [v. Campbell], 315 F. Supp. 2d at 1184 (quoting Vasquez v. Hillery, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)). This is consistent with settled law established by the Supreme Court. . . . We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

---

[5]The petitioner in Duncan raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal. Presented with a state constitutional claim, the state court applied state law in resolving the appeal.

Case No. 4:06cv255/RH/EMT

416 F.3d at 1302-03 (citations omitted).[6]

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, that is, procedurally barred from federal review. Bailey v. Nagle, 172 F.3d 1299, 1302–03 (11th Cir. 1999). This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. *See* Coleman v. Thompson, 501 U.S. 722, 734-35 and n.1, 111 S. Ct. 2546, 2555 and n.1, 115 L. Ed. 2d 640 (1991); Caniff v. Moore, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); Chambers v. Thompson, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord* Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993); Parker v. Dugger, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991). In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. Bailey, 172 F.3d at 1303. In the second instance, a federal court must determine whether the last state court rendering judgment clearly and expressly stated its judgment rested on a procedural bar. *Id.*. A federal court is not required to honor a state's procedural default ruling unless that ruling rests on adequate state grounds independent of the federal question. *See* Harris v. Reed, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989). The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question. Lee v. Kemna, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002). The Eleventh Circuit has set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision. Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001). First, the last state court rendering judgment must clearly and expressly state it

---

[6]In his initial brief before the Court of Criminal Appeals, the petitioner cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law." McNair v. Campbell, 416 F.3d 1291, 1303 (11th Cir. 2005). The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments. *Id.*

Case No. 4:06cv255/RH/EMT

is relying on state procedural rules to resolve the federal claim.[7] Second, the state court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law. Third, the state procedural rule must be adequate. *Id.* The adequacy requirement has been interpreted to mean the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion. *Id.*

To overcome a procedural default, the petitioner must show cause and prejudice or a fundamental miscarriage of justice in order for the federal habeas court to reach the merits of a claim. Tower, 7 F.3d at 210; Parker, 876 F.2d 1470. "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986)). Lack of counsel or ignorance of available procedures is not enough to establish cause. Tower, 7 F.3d at 210. To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." Schlup, 513 U.S. at 327. Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.

*Id.*

Within this framework, the court will review Petitioner's claim.

IV. PETITIONER'S CLAIM

---

[7]The federal court should honor the procedural bar even if the state court alternatively reviewed the claim on the merits. Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995); Alderman v. Zant, 22 F.3d 1541 (11th Cir. 1994).

Petitioner raises one claim in the instant habeas action, namely, the trial court failed to credit his VOP sentence with the thirteen (13) years he actually served in prison on the original sentences (Doc. 1 at 4, 6). In response to an order issued by the court requiring Petitioner to show cause why his petition should not be summarily dismissed for failing to raise a federal claim, as opposed to merely a state law issue (Doc. 5), Petitioner responded that he was raising the issue as a violation of Double Jeopardy Clause of the Constitution (Doc. 6).[8]

Respondent contends Petitioner failed to raise a federal claim in state court; therefore, the claim was not exhausted and is now procedurally barred (Doc. 8 at 5–8). Furthermore, Petitioner's claim is not cognizable in federal habeas because it presents an issue of state law only; it does not present a federal issue (*id*. at 5–6). In his reply brief, Petitioner contends that he fairly presented a federal claim to the state courts by claiming that the failure to award sentence credit constituted a violation of federal due process and the Supreme Court's decision in North Carolina v. Pearce, 395 U.S. 711, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969) (Doc. 9, attached Motion to Correct Sentence at 2).

The undersigned liberally construes Petitioner's federal petition, as clarified in his response to the show cause order, as raising one of the claims that he raised in his Rule 3.800 motion. In the state court motion, Petitioner cited Pearce and State v. Green and argued that according to those cases, he should have been given credit on his VOP sentence for time previously served on his original sentences (Doc. 8, Ex. A at 1–2). He also argued that the written judgment of conviction and sentence did not conform to the oral pronouncement of the sentencing court that the "DOC shall apply original jail time credit and compute the credit on the cases. That would be the time he served." (*id*. at 1; Doc. 8, Ex. A at 77–78). The undersigned concludes that Petitioner fairly presented a federal double jeopardy claim to the state courts. Therefore, that claim will be addressed. However, Petitioner has not presented the second claim (that the written judgment did not conform to the oral pronouncement at sentencing) in the instant federal habeas action; therefore, that claim is not properly before this court.

---

[8]Petitioner does not present his claim as a challenge to his plea on the ground that it was involuntary or unknowing; rather, he presents purely a double jeopardy claim that he was entitled to credit on his VOP sentence for the time he spent incarcerated on his original sentence (*see* Doc. 1 at 4–6; Doc. 6; Doc. 9).

Case No. 4:06cv255/RH/EMT

The state court did not address Petitioner's double jeopardy claim; rather, the court addressed only Petitioner's claim that the judgment and sentence did not accurately reflect the court's oral announcement at the sentencing hearing (Doc. 8, Ex. A at 3).  The state court denied the motion on the ground that Petitioner's judgment and sentence conformed to the oral pronouncement of the sentencing court (*id*.).  Because the state court did not address Petitioner's double jeopardy claim, this court must review the claim de novo.

Respondent contends that Petitioner waived his double jeopardy claim when he pleaded guilty pursuant to the written plea agreement, because the terms of the plea agreement specifically provided that the sentence to be imposed for violation of probation would not be reduced for time served or time gained on the original fifteen-years prison component previously served by Petitioner, and that the only credit for time served would be limited to the time between the date of execution of the violation of probation warrant and the date of Petitioner's admission that he violated probation, specifically, May 1, 2004, to November 4, 2004 (*see* Doc. 15 at 3, 5).

Upon review of the merits of Petitioner's double jeopardy claim, the undersigned concludes that the claim is without merit.  The constitutional guarantee against double jeopardy consists of three separate constitutional protections:  (1) protection against a second prosecution for the same offense after acquittal, (2) protection against a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense.  Pearce, 395 U.S. at 717, *overruled on other grounds*, Alabama v. Smith, 490 U.S. 794, 109 S. Ct. 2201, 104 L. Ed. 2d 865 (1989).  In Pearce, the case upon which Petitioner relies, the Supreme Court held that the protection against double jeopardy requires that if a defendant is reconvicted upon retrial for the same offense, the years he spent in prison under the first sentence must be fully "credited," including not only time actually served but also time credited for good behavior, to the second sentence that is imposed.  *Id.* at 718–19.  However, when credit for time previously served is not given, double jeopardy is not violated so long as if the credit had been given, the sentencing judge could have reached the same result by sentencing the defendant to a longer prison sentence, and the longer sentence would have been permissible under state sentencing laws.  *Id.* at 791 n.14.

Florida law allows a sentencing court, in its discretion, to direct the defendant to be placed on probation upon the completion of any part of a specified period of incarceration.  Fla. Stat.

§ 948.01(8) (1990).[9]  Combined periods of incarceration and probation at the time of the original sentence cannot exceed the maximum period of incarceration provided by statute for the offense charged.  State v. Holmes, 360 So. 2d 380, 383 (Fla. 1978).  Section 948.06 allows the court, upon finding a violation of probation, to impose any sentence which it might originally have imposed before placing the defendant on probation.  Fla. Stat. § 948.06(1) (1990).  The Florida courts have interpreted this statute as applicable to imposition of a prison sentence based on a violation of probation in a "probationary split sentence" situation, as is the situation in the instant case, and held that it is lawful to impose a prison sentence based on violation of probation in a "probationary split sentence," so long as the original prison term and the violation of probation prison term do not exceed the statutory maximum.  See Hernandez v. State, 889 So. 2d 913 (Fla. 2nd DCA 2004).  In such cases, the violator must receive credit for jail time previously served, but not credit for time spent on probation.  Holmes, 360 So. 2d at 383.  Questions of interpretation of state statutes are within the special authority of the state supreme court, and federal review is limited to the question of whether the state procedure passes constitutional muster.  See Williams v. Wainwright, 650 F.2d 59, 61 (5th Cir. July 6, 1981).[10]  In Williams, the court held that the Florida sentencing procedure which allows a sentencing court to direct a defendant to be placed on probation upon completion of any part of specified period of sentence and which also allows the court, upon finding a violation of probation, to impose any sentence which might have originally been imposed before placing defendant on probation, does not violate the constitutional prohibition against double jeopardy.  *Id.*

In Petitioner's case, although Petitioner was not given credit for the previous fifteen-year period (thirteen (13) years actually served plus earned, unforfeited gain time), even if the fifteen (15) years had been credited, the sentencing judge could legally have reached the same result that he did reach simply by sentencing Petitioner to twenty-five (25) years in prison.  That would have been permissible under Florida law, since Petitioner was convicted of three counts of first-degree robbery involving the carrying of a firearm and four counts of first-degree kidnapping (*see* Doc. 8, Ex. A at

---

[9]The 1990 version of the statute applies in this case because that was the version in effect at the time of Petitioner's offense conduct (October 4, 1990) and his original sentence (March 8, 1991).

[10]*See* Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc) (adopting in the Eleventh Circuit all former Fifth Circuit decisions rendered before October 1, 1981 as binding precedent).

Case No. 4:06cv255/RH/EMT

42–43, 45–56), and on each count a maximum sentence of life imprisonment could have been imposed. *See* Fla. Stat. §§ 775.082 (3)(b), 787.01(1(a), 2), 812.13(2)(a) (1990).[11] Put another way, the VOP sentences of ten (10) years plus the 1991 sentences of fifteen (15) years did not exceed the maximum life sentences that Petitioner could have received on each of the robbery and kidnapping charges.[12] Therefore, Petitioner has failed to show that his sentence violated the Double Jeopardy Clause.

To the extent Petitioner claims that his VOP sentence violated state law, specifically, the state supreme court decision in Green, his claim is not cognizable in federal habeas. It is well established that federal habeas relief is available to correct only constitutional injury. 28 U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. 62, 67–68, 112 S. Ct. 475, 479–80, 116 L. Ed. 2d 385 (1991); Wainwright v. Goode, 464 U.S. 78, 83–84, 104 S. Ct. 378, 78 L. Ed. 2d 187 (1983). Errors of state law which do not infringe upon a defendant's constitutional rights provide no basis for federal

---

[11]The relevant portion of section 812.13, the robbery statute, provided:

(2)(a) If in the course of committing the robbery the offender carried a firearm or other deadly weapon, then the robbery is a felony of the first degree, punishable by imprisonment for a term of years not exceeding life imprisonment or as provided in s. 775.082, s. 775.083, or s. 775.084.

Fla. Stat. § 812.13 (1990).

The relevant portion of section 787.01, the kidnapping statute, provided:

(2) A person who kidnaps a person is guilty of a felony of the first degree, punishable by imprisonment for a term of years not exceeding life or as provided in s. 775.082, s. 775.083, or s. 775.084.

Fla. Stat. § 787.01 (1990).

The relevant portion of section 775.082 provided:

(3) A person who has been convicted of any other designated felony may be punished as follows:
. . . .
(b) For a felony of the first degree, by a term of imprisonment not exceeding 30 years or, when specifically provided by statute, by imprisonment for a term of years not exceeding life imprisonment;

Fla. Stat. § 775.082 (1990).

[12]The court notes that the written plea agreement on the VOP stated the maximum sentence for each kidnapping count was fifteen (15) years (*see* Doc. 8, Ex. A at 57), but the statute provides that the maximum is life, *see* Fla. Stat. § 787.01(2); furthermore, the sentencing court asked Petitioner if he understood that the maximum sentence he could receive was up to life in prison on all of the charges, and Petitioner responded, "Yes, sir" (Doc. 8, Ex. A at 64).

Case No. 4:06cv255/RH/EMT

habeas corpus relief.  *See* <u>Tejada v. Dugger</u>, 941 F.2d 1551, 1559 (11th Cir. 1992) ("A state's interpretation of its own laws or rules provides no basis for federal habeas relief, since no question of a constitutional nature is involved.") (quoting <u>Carrizales v. Wainwright</u>, 699 F.2d 1053 (11th Cir. 1983)).  "This limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is couched in terms of equal protection and due process."  <u>Branan v. Booth</u>, 861 F.2d 1507, 1508 (11th Cir. 1988) (citation omitted).  Therefore, to the extent Petitioner claims that the sentencing court did not comply with state law in failing to credit his VOP sentence with time served on his original sentence, his claim is not cognizable in federal habeas.

  Furthermore, Petitioner waived any entitlement to sentence credit for time served and gain time earned on his prior fifteen-year sentence.  In the plea agreement, Petitioner agreed that the intent of the agreement was that he would receive a prospective sentence of ten (10) years of incarceration on each case with no probation to follow, and with credit for jail time served from May 1, 2004, to November 4, 2004, and <u>no credit for time actually served or gain time earned on the original fifteen-year sentences</u> (Doc. 8, Ex. A at 57–59 (emphasis added)).  Indeed, the terms of the plea agreement specifically acknowledged Petitioner's right to sentence credit under <u>Green</u> and specifically waived that right (*id.*).  By signing the plea agreement, Petitioner also acknowledged that no one had made any other provisions or suggestion of any kind that if he would plead to the violations he would receive a light sentence or any other form of leniency, except as embodied in the plea agreement (*id.* at 58).  He certified that he understood the complete terms of the plea agreement, and if the court did not concur in the agreement, he could withdraw his plea (*id.*).  He acknowledged that he had the advice of counsel on all matters included in the plea agreement, and he fully understood the terms of the agreement and the legal implications of the terms (*id.* at 59).  He further certified that his plea was entered freely and voluntarily, and no one had persuaded, promised, induced or otherwise influenced him to enter the plea to the violations except as set forth in the written agreement (*id.*).  During the plea and sentencing hearing, Petitioner's counsel explained that the intent of the plea agreement was that Petitioner would serve a ten-year sentence on the VOP; the sentence would start on the day Petitioner voluntarily surrendered on the VOP in May of 2004; and there would be no credit for unforfeited gain time or recapture of credit for time served on the original sentence (*id.* at 65–67).  Thus, by entering the plea agreement, Petitioner

intentionally relinquished or abandoned any right to receive sentence credit for any time served on the original fifteen-year prison term.

Moreover, during the plea colloquy with the sentencing judge, Petitioner told the judge under oath that he understood that his sentence on the probation violation would be ten years in prison with credit <u>only from the time that had served since his arrest for the VOP</u>, and no probation to follow (*id*. at 64 (emphasis added)). It is well settled that "representations of the defendant . . . [at a plea proceeding] as well as any findings made by the judge accepting the pleas, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." <u>Blackledge v. Allison</u>, 431 U.S. 63, 73–74, 97 S. Ct. 1621, 52 L. Ed. 2d 136 (1977). Therefore, the undersigned concludes that Petitioner's guilty plea waived his state law claim of entitlement to credit for time served on his original sentence.

Accordingly, it is respectfully **RECOMMENDED**:

That the petition for writ of habeas corpus (Doc. 1) be **DENIED**.

At Pensacola, Florida, this 29th day of November 2007.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon the magistrate judge and all other parties. Failure to object may limit the scope of appellate review of factual findings.** *See* **28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**